1  Micah L. Bailey, SBN 248384
2  **PURDY & BAILEY, LLP**
   12520 High Bluff Drive, Suite 220
3  San Diego, California 92131
   Telephone: (858) 564-0136
4  Facsimile: (858) 564-0142
   mbailey@purdybailey.com
5  Attorneys for AGM GLOBAL SECURITIES LIMITED, Plaintiff

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| AGM GLOBAL SECURITIES LIMITED, an England and Wales Corporation, | Case No.: **'25CV1477 RSH DDL** |
| Plaintiff, | **AGM GLOBAL SECURITIES LIMITED'S COMPLAINT FOR:** |
| v. | 1. **VIOLATION OF CALIFORNIA PENAL CODE §496** |
| THOMAS EDWARD MCGRATH, an Individual, MHI CAPITAL LLC, a Wyoming Limited Liability Company, THE BANK OF NEW YORK MELLON, a New York Corporation, and DOES 1-50, inclusive, | 2. **CONVERSION**<br>3. **FRAUD (INTENTIONAL MISREPRESENTATION)**<br>4. **FRAUD (CONCEALMENT)**<br>5. **FRAUD (PROMISSORY FRAUD)**<br>6. **BREACH OF FIDUCIARY DUTY**<br>7. **CONSTRUCTIVE TRUST** |
| Defendants. | 8. **UNJUST ENRICHMENT** |
| | **[JURY TRIAL REQUESTED]** |

20  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21      Plaintiff AGM GLOBAL SECURITIES LIMITED ("AGM"), by and through

22  its respective counsel of record with Purdy & Bailey, LLP, hereby alleges and

23  pursues this Complaint against Defendant THOMAS EDWARD MCGRATH

24  ("MCGRATH"), Defendant MHI CAPITAL LLC ("MHI"), Defendant THE BANK

25  OF NEW YORK MELLON ("BNYM") and DOES 1-50 (collectively referred to

26  herein as "DEFENDANTS"), as follows:

27  / / /

28  / / /

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1

**COMPLAINT**

# I.

## PARTIES

1.     AGM is, and at all times relevant to this action was, an England and Wales Corporation, duly organized and existing under the laws therein, with its principal place of business at 12a White Friars, Chester, United Kingdom, CH1 1NZ.

2.     MCGRATH is, and at all times relevant to this action was, an individual residing in Vancouver, Washington.

3.     MHI is, and at all relevant times mentioned herein was, a Wyoming Limited Liability Company, with its principal place of business in San Diego County, California.

4.     BNYM is, and at all relevant times mentioned herein was, a New York Corporation, with its principal place of business in New York, New York.

5.     AGM is unaware of the true identity, nature and capacity of each of the defendants designated herein as DOES 1 through 50.  AGM is informed and believes and thereon alleges that each of the defendants designated herein as a DOE are individuals and entities who are agents and employees of each of the remaining Defendants, and in doing the things alleged hereinafter was acting within the scope of its agency and employment and with the authority of each of the remaining Defendants.  Upon learning the true identity, nature and capacity of the DOE defendants, AGM will amend this Complaint to allege their true names and capacities.

6.     AGM alleges on information and belief that at all material times herein alleged that the Defendants, and each of them, were agents, servants and employees of the other Defendants, and each of them.

# II.

## JURISDICTION AND VENUE

7.     AGM incorporates herein the allegations contained in each and every

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

2

1  paragraph above, inclusive, with the same force and effect as though fully set forth

2  herein.

3      8.      Jurisdiction is proper in this Court as this action as there is complete

4  diversity of citizenship among the parties and the amount in controversy exceeds

5  $75,000.00.

6      9.      Venue is proper in this District because the acts, transactions,

7  occurrences, tortious interference and conversion giving rise to this action occurred

8  in the Southern District of California.

9                                **III.**

10                        **CIVIL CONSPIRACY**

11     10.     DEFENDANTS, and each of them, took these and other overt acts

12  pursuant to, and in furtherance of, said conspiracy, and furthered the objective of the

13  conspiracy by cooperating with, lending aid, and lending encouragement to the acts

14  of each other.

15     11.     As a direct and proximate result of the DEFENDANTS' conspiracy,

16  AGM has been irreparably harmed and have sustained substantial monetary

17  damages and are jointly and severally liable for all of the causes of action

18  specifically detailed below as a result of their conspiracy.

19     12.     As set forth below, DEFENDANTS, and each of them, knowingly and

20  willfully conspired and agreed amongst themselves, or in the alternative, later joined

21  the ongoing conspiracy and fully ratified all past actions and the purpose of the

22  conspiracy to defraud AGM and otherwise cover-up and conceal their inability to

23  pay for the work that they expressly requested that AGM perform.

24                                **IV.**

25                        **GENERAL ALLEGATIONS**

26     13.     MHI holds itself out as "a multi-faceted, privately-held real estate

27  development and investment company based in San Diego, California. In

28  association with our core group of network partners we evaluate and invest in the

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

3

**COMPLAINT**

1  acquisition and development of commercial real estate assets and non-public

2  corporate investment opportunities which have good growth potential, competent

3  management, and industry specific solutions. Our primary objective is to locate,

4  invest, develop, build, lease, own, and manage income producing assets. Properties

5  and/or corporate equity investments which have strong growth potential, significant

6  cash flow and residual value enhancement potential are in current focus. Value adds

7  such as creative and aggressive asset management, targeted capital improvements,

8  tenant lease-up opportunities and international expansion potential are coveted. MHI

9  is committed to success through its core belief that all business activities are to be

10 conducted with integrity, honesty, and the highest standards of quality without

11 compromise."

12      14.    MHI's owner, MCGRATH, is the grandson of William "Bill" McGrath

13 and Carlee McGrath, the late founders of C.W. McGrath Inc., a San Diego based

14 general engineering contracting company responsible for completing a significant

15 number of major residential and commercial development projects throughout San

16 Diego County over the course of the last several decades.

17      15.    From 1989 to 2015, MCGRATH served as Managing Director of C.W.

18 McGrath Inc.

19      16.    In addition to running C.W. McGrath Inc., Bill and Carlee McGrath

20 also built a substantial portfolio of real estate holdings primarily located in

21 California, which they later passed down to their heirs.

22      17.    The McGrath Family established the McGrath Family Foundation,

23 which is currently led by Bill and Carlee McGrath's daughter, Laurie C. McGrath.

24      18.    As a member of the McGrath Family, MCGRATH has benefitted

25 personally and professionally from his association with his family's reputation,

26 legacy, and business and real estate holdings, including, but not limited to,

27 properties acquired, developed, or managed under the McGrath family name.

28      19.    In furtherance of his and MHI's business ventures, MCGRATH/MHI

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

4

**COMPLAINT**

entered into the following arrangements:

20.    On or about September 21, 2022, MHI and BNYM entered into an agreement with BNYM under which BNYM served as custodian for a custody account (Account No. ******5100) to manage assets ("the BNYM Primary Account").

21.    MHI also maintained a checking account with Wells Fargo, Account No. ******4595 ("the Wells Fargo Account"), which MCGRATH and MHI utilized at all times described herein.

22.    AGM is a corporate investment entity based in Wales and England, which invests in securities at wealth management desks and in global markets, including Forex trading.

23.    Marnie Pascoe ("Pascoe"), who is based in Australia, serves in an executive capacity with AGM.

24.    Asher Corridon ("Corridon"), who is based in the United Kingdom, serves in an executive capacity with AGM.

25.    In 2020, AGM obtained a Corporate Information Sheet ("CIS") for MHI/MCGRATH, which first made AGM aware of their existence.

26.    On July 22, 2024, MCGRATH contacted Pascoe via WhatsApp, representing "Hi friend... do you have a minute to spare? I'm in a BTC deal that needs a digital wallet that can receive then payout Seller and then payout profit share splits in accordance to how agreed... is this something you can assist with? the deal has already cleared the respective wallets for a 5.5M face value trade and should be commencing trade shortly..."

27.    Immediately following this message, MCGRATH and Pascoe spoke for 50 minutes via WhatsApp, regarding MHI/MCGRATH's proposal.

28.    During the call, MCGRATH and Pascoe discussed having MCGRATH establish a new subaccount under MHI's BNYM Primary Account, which AGM and only AGM would own, utilize and/or control, to allow AGM to deposit its own

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

5

1    funds for use in the transaction.

2        29.    Prior to this July 22, 2024 call, MCGRATH and Corridon had held

3    numerous discussions regarding the creation and use of a subaccount in this respect.

4        30.    Leading up to this point, AGM believed that MCGRATH/MHI were

5    well-funded and that the proposal structure carried minimal risk.

6        31.    Based on information and belief, however, AGM alleges that at this

7    time, MCGRATH/MHI were experiencing significant financial distress (which

8    included owing a significant amount of money to BNYM) and were seeking access

9    to liquid capital from third parties, including AGM, under fraudulent pretenses, in

10   order to divert and otherwise satisfy their mounting liabilities.

11       32.    At the time MCGRATH spoke with Pascoe on July 22, 2024 or in the

12   conversations that MCGRATH had with Corridon leading up to July 22, 2024,

13   based upon information and belief, MCGRATH/MHI did not disclose the financial

14   distress that they were experiencing at the time.

15       33.    On July 23, 2024, in furtherance of the communications that Pascoe

16   and MCGRATH exchanged the day prior, MCGRATH delivered AGM banking

17   coordinates, which indicated that that MCGRATH had established the Subaccount

18   that he and Pascoe had discussed the day prior with BNYM, in AGM's name,

19   Account No. *******6000 ("the Subaccount"), as depicted by the following

20   screenshot that MCGRATH sent to Pascoe via WhatsApp:

21
22
23
24
25



26       34.    As noted in these July 23, 2024 banking coordinates, Daniel Schulman

27   ("Schulman"), a Senior Vice President/Client Strategist employed by BNYM and

28   based in Garden City, New York, served as the banking officer for the Subaccount

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

6

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1
2
(and is believed to have served as banking officer for the BNYM Primary Account as well).

35.    After MCGRATH/MHI established the Subaccount, AGM received access to the online portal for the Subaccount, by and through BNYM's knowledge, efforts and involvement.

36.    DEFENDANTS and AGM agreed that AGM would enjoy sole access to the Subaccount and that MCGRATH/MHI having no ownership or access to AGM's wholly owned funds that were to be deposited into the Subaccount.

37.    AGM thereafter funded the Subaccount by depositing $100.00 and $733,400.00, respectively, on September 23 and 24, 2024 (for a total of $733,500.00), into the Subaccount through a New York-based attorney.

38.    Based upon this belief and understanding, i.e., that MCGRATH had established the Subaccount in AGM's name only, on September 25, 2024, Corridon directed Schulman/BNYM to wire AGM's funds within Subaccount to AGM's account with Zerocap Pty Ltd, Melbourne, an Australian based digital asset trading firm and liquidity provider ("the AGM Zerocap Account") in the amounts of $448,000.00 and $285,000.00 (totaling $733,000.00) respectively, for benefit of its customers.

39.    Immediately thereafter, Pascoe sent a message to its representative from Zerocap, Arpit Beri ("Beri"), asking him to acknowledge receipt of the September 25, 2024 wires.

40.    In response, Beri acknowledged receipt of the wires into the AGM Zerocap Account, but stated "we have received the two deposits, but it has come from a different entity name and pending review from our team."

41.    Still acting under the belief that the Subaccount had been set up in AGM's name only, Pascoe responded, "Thanks Arpit. The sending entity is AGM global securities limited. The account details are in the AGM portal."

42.    Beri later responded, "are you able to provide further proof/payment

7

**COMPLAINT**

1   confirmation from AGM account that's been approved in the portal, we received the

2   funds under a different entity name i.e. M H I capital."

3      43.    Corridon and Pascoe contacted Schulman and MCGRATH the same

4   day directly to provide confirmation to Zerocap that the name on the Subaccount

5   was indeed AGM's name, instead of MHI's.

6      44.    Neither Schulman nor MCGRATH responded, which prompted

7   Zerocap to return both wires to the Subaccount on September 26, 2024 and cause

8   direct and irreparable financial damage to AGM with respect to his relationship with

9   Zerocap.

10     45.    On October 9, 2004, at AGM's request and instruction (as confirmed in

11  an email), BNYM/Schulman wired $20,000.00 from the Subaccount to "Currency

12  Cloud Limited," which establishes Schulman/BNYM's knowledge, understanding,

13  and agreement that the funds contained within the Subaccount belonged to AGM,

14  not MHI.

15     46.    On October 14, 2024, Corridon instructed Shulman and Patrick Ng

16  ("Ng"), another banking officer associated with BNYM/the Subaccount, to wire

17  $633,500.00 from the Subaccount to AGM's account with Finmo, another banking

18  platform that it utilizes, in furtherance of the proposed transaction with MHI.

19     47.    However, the October 14, 2024 wire to Finmo also failed because the

20  name on the Subaccount again did not match AGM's.

21     48.    Because of these repeated problems associated with the Subaccount,

22  AGM decided to simply open a new account with BNYM, in AGM's name only,

23  after Corridon spoke with Schulman on October 22, 2024, and to transfer AGM's

24  funds held within the Subaccount into this new account.

25     49.    In response to an email that Corridon sent on October 23, 2024, on

26  October 24, 2024, Shulman emailed Corridon, writing,

27      Confirming MHI Capital LLC CUST AGM is the name used for the
        [Subaccount].

28      The account is owned by MHI Capital and to the best of my

8

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

understanding there is an agreement between MHI and AGM **where the underlying JV assets are the property of AGM**.

Please let me know if there is anything else needed.

50.     As of October 30, 2024, the Subaccount held $713,520.09 in cash, funds that belonged solely to AGM, as evidenced by the monthly Account Statement that BNYM issued for the Subaccount (which also reflected that that the name on the account was "Custodian For M H I Capital LLC Under Agreement Dated September 21, 2022-**Agm**").

51.     As of October 31, 2024, MCGRATH/MHI were 2 ¼ months in arrears in payments they owed to BNYM, which neither MCGRATH/MHI nor BNYM had disclosed to AGM up to that point.

52.     On November 4, 2024, Shulman emailed MCGRATH, Corridon, and Ng, in reference to the pending request to transfer AGM's funds out of the Subaccount and into an a new BNYM account held in AGM's name only, stating, "The Legal Investigation team has not approved the transfer as of yet. There will be discussion tomorrow with the team to provide an explanation."

53.     On November 4, 2024, Pascoe and MCGRATH spoke via WhatsApp and MCGRATH disclosed to Pascoe that MCGRATH/MHI were 2 ¼ months in arrears in payments MHI owed to BNYM.

54.     On November 6, 2024, MCGRATH emailed Schulman/BNYM, directing him to transfer AGM's funds into MHI's Wells Fargo Account,

Daniel,

Please close out the accounts and transfer balance of the cash balance [i.e., AGM's funds] to the MHI capital account coordinates below…

Please have the cash transferred same-day priority.

55.     On November 7, 2024, Ng emailed MCGRATH and Schulman, writing,

Hi Thomas,

9

**COMPLAINT**

We had euros (residual cash) that will be converted into USD in [the BNYM Primary Account]. Upon settlement of the fx on 11/11/24, we will transfer the cash to [the Subaccount]. Afterwards, the full USD cash balance will be transferred to Wells Fargo account. I will provide you the exact amount when the time comes.

56.    On November 7, 2024, in accordance with MCGRATH's instructions to BNYM and without informing AGM, DEFENDANTS diverted $624,273.77 of AGM's funds from the Subaccount and into the BNYM Primary Account, which AGM could not access, and which AGM alleges, based upon information and belief, was used to satisfy MCGRATH/MHI's then existing debts they owed to BNYM.

57.    On November 8, 2024, in accordance with DEFENDANTS' instructions to BNYM and without informing AGM, DEFENDANTS diverted $44,697.00 of AGM's funds from the Subaccount and into the MHI Wells Fargo Account, which AGM could not access, and which AGM alleges, based upon information and belief, MCGRATH/MHI have since spent.

58.    On November 8, 2024, MCGRATH notified Pascoe via WhatsApp communication with her in reference to BNYM, "those fuckers (please excuse) have frozen all funds until all currencies that were held in my 6 six accounts are all converted to dollar (see email) absolutely 1000% insane.  This leaves me without a fucking penny until Tuesday because this Monday is a holiday...."

59.    MCGRATH and Pascoe then spoke for 44 minutes on November 8, 2024 on WhatsApp and during this call, MCGRATH told Pascoe that the Subaccount had been depleted to a zero balance, that he was unable to return AGM's funds at that time, and that Shulman had told him [MCGRATH] to invent a false narrative concerning the reasoning for BNYM's decision to close MHI's accounts to relay to AGM.

60.    On November 12, 2024, in accordance with DEFENDANTS' instructions to BNYM and without informing AGM, DEFENDANTS diverted $44,697.85 of AGM's funds from the Subaccount and into the MHI Wells Fargo Account, which AGM could not access, and which AGM alleges, based upon

10

**COMPLAINT**

1    information and belief, MCGRATH/MHI have since spent.

2    61.    In total, therefore, DEFENDANTS diverted $713,668.62 of AGM's

3    funds from the Subaccount, without AGM's knowledge or agreement.

4    62.    AGM demanded on multiple occasions immediately thereafter that

5    DEFENDANTS restore its $713,668.62 in remaining funds.

6    63.    On November 16, 2024, Shulman/BNYM emailed Corridon/AGM,

7    Asher,

8    This is a conversation that Thomas should have already had with you.

9    At this time, by request of BNY Wealth, Thomas McGrath and MHI
10   Capital are no longer clients of the bank. Thomas was asked by the
     bank to find other bank has provided instructions by Thomas for where
11   to send the balance of funds in the MHI accounts.

12   We have discussed ad nausea him that regardless of agreements
     between AGM and MHI that the accounts belonged to MHI, regardless
13   of what Thomas represented. If you recall, that is why the account were
     required to have the MHI's name attached to the account and on all
14   transfers, could not have AGMs full legal name associated, and the
     transfers need to be requested and confirmed by Thomas.

15   I'm sorry if this is a surprise, but Thomas should have brought it up
16   with you as soon as we requested he moved his accounts.

17   64.    However, despite Shulman/BNYM's justifications, Shulman/BNYM

18   knew that DEFENDANTS were not authorized to utilize AGM's funds to satisfy

19   any debt that MCGRATH/MHI owed to BNYM, as evidenced by Shulman's

20   express acknowledgment on October 24, 2024 that the funds "are the property of

21   AGM."

22   65.    On November 23, 2024, Pascoe and MCGRATH spoke again via

23   WhatsApp, at which time MCGRATH admitted that a portion of AGM's funds had

24   been used to satisfy MCGRATH/MHI's debt to BNYM and the balance of the

25   funds, $89,394.85, were diverted to MHI's Wells Fargo Account and which

26   MCGRATH/MHI refused to restore.

27   66.    On December 9, 2024, AGM sent a formal demand letter to

28   DEFENDANTS, through an attorney that AGM retained, demanding immediate

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

11

**COMPLAINT**

return of its funds.

67.     On December 23, 2024, Laurie C. McGrath of the McGrath Family, issued a check on behalf of the "McGrath Grandchildren's Ins. Trust" payable to MCGRATH in the amount of $725,800.00 (nearly the identical amount that DEFENDANTS owed AGM at that point in time), which MCGRATH deposited in MHI's Wells Fargo Account on December 31, 2024 ("the McGrath Trust Funds").

68.     On January 1, 2025, MCGRATH informed Pascoe, via WhatsApp,

On January 6th I will wire 250k to your attorney's account. There will be no more delays on this because these funds are now in my control. I deposited a check today (see attached deposit slip) and according to the bank the funds will clear and be made available in full on January 6th. I tried everything I could to lessen the hold time, but Bank policy just refused.

I sincerely apologize for the trouble that the past delays have caused. I had multiple strategies fail on structures I forced in to place in an attempt to expedite the return of your funds. The delays have understandably cast shade over my true intentions but hopefully this first payment of 250K, roughly 1/3 of total balance of the sub account at the time BNYM closed MHI's account, will help erase the doubts that have been created because of the missed timelines.

As for the balance remaining after you receive the initial payment of 250K... As I have stated from the very beginning… I am 100% committed to paying every dime owed plus I maintain the same level of commitment to paydown any additional losses that have come as a result of this… That said, I am forced to pay you off the back of earnings that I accrue as we move forward. I have several deals primed and/or already in process and I commit to paying you from the net proceeds MHI clears on any given transaction. To add clarity on expectations pertaining to payment amounts and dates, etc, I will be sure to keep Asher in the know as to each deal so that you are made aware of the status and the progress going forward.

I am also perfectly willing to pursue any and all viable strategies that could result in having the balance owed paid back faster then what I have resolved thus far. This includes legal strategies that involve seeking reimbursement from BNYM.

69.     On or about January 6, 2025, MHI wired $250,000.00 of the McGrath Trust Funds to AGM, in partial satisfaction of DEFENDANTS' debt.

70.     However, DEFENDANTS still owe a principal amount of $463,668.62 to AGM.

/ / /

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

12

**COMPLAINT**

# V.

## FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL THEFT (PEN.C. §496)

### (AGM v. All Defendants)

71.     AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

72.     Pen.C. §496(a) creates an action against 'any' person who (1) receives 'any' property that has been stolen or obtained in any manner constituting theft, knowing the property to be stolen or obtained, or (2) conceals, sells, withholds, or aids in concealing or withholding 'any' property from the owner, knowing the property to be stolen or obtained.

73.     Pen.C. §1.07(a)(38) defines a "person" as "an individual, corporation, or association".

74.     Pen.C. §496(c) permits 'any' person who has been injured by a violation of Pen.C. §496(a) to recover three times the amount of actual damages, costs of suit and attorney's fees in a civil suit.

75.     DEFENDANTS, and each of them, are "persons" who violated Pen.C. §496(a) in knowingly stealing, receiving, or withholding no less than $463,668.62 from AGM by theft, stealing, and/or by false or fraudulent representations and/or pretenses for their own financial gain.

76.      DEFENDANTS, and each of them, stole, received, or withheld this $463,668.62 from AGM in a manner constituting theft or extortion, knew the property to be stolen or obtained, and they concealed, sold, withheld or aided in concealing, selling or withholding any property from AGM, knowing the property to be stolen or obtained.

77.      As a proximate cause of DEFENDANTS' violations of Pen.C. §496, AGM suffered economic damages in an amount to be proven at trial, but no less than $463,668.62.

**COMPLAINT**

78.    As a proximate cause of DEFENDANTS' violations of Pen.C. §496, AGM also seeks statutory treble damages in the amount of no less than $1,391,005.86 pursuant to Pen.C. §496(c).

79.    AGM is also entitled to punitive damages pursuant to Civ.C. §3294 because the actions described above constitute malice, oppression, and/or fraud.

80.    AGM is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from the dates the funds were improperly received or withheld by Defendants, commencing on September 24, 2024, until Judgment is entered.

81.    AGM is entitled to the recovery of all reasonable legal fees that it incurs in this action against DEFENDANTS pursuant to Pen.C. §496(c).

82.    AGM is further entitled to recover reasonable costs incurred in prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq.*

## VI.

## **SECOND CAUSE OF ACTION FOR CONVERSION**

### (AGM v. All Defendants)

83.    AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

84.    From on or about September 24, 2024, and continuing thereafter, DEFENDANTS, and each of them, acted in concert to convert at least $463,668.62 in readily ascertainable funds from AGM in a manner constituting theft.

85.    AGM was unaware of the full extent of this conversion until discovering that funds and interest were not remitted or accounted for.

86.    DEFENDANTS converted these funds from AGM without AGM's knowledge or consent. DEFENDANTS' conduct in this regard was intentional and wrongful.

87.    As a proximate cause of DEFENDANTS' conversion in this regard,

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

1  AGM has been monetarily damaged in an amount believed to be in excess of
2  $463,668.62, but subject to proof at trial.

3       88.    AGM is also entitled to punitive damages against DEFENDANTS
4  pursuant to Civ.C. §3294 because the actions described above constitute malice,
5  oppression, and/or fraud.

6       89.    AGM is further entitled to pre-judgment interest on these damages at
7  the tort rate of seven percent (7%) per annum from the dates the funds were
8  improperly received or withheld by Defendants, commencing on September 24,
9  2024, until Judgment is entered.

10      90.    AGM is further entitled to recover reasonable costs incurred in
11 prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq*.

**VII.**

**THIRD CAUSE OF ACTION FOR FRAUD (INTENTIONAL MISREPRESENTATION**

**(AGM v. McGrath, MHI, and Does 1 to 50)**

16      91.    AGM incorporates herein the allegations contained in each and every
17 paragraph above, inclusive, with the same force and effect as though fully set forth
18 herein.

19      92.    MCGRATH, MHI, and DOES 1 to 50, and each of them, individually
20 and as a conspiracy, were responsible for making the following intentional
21 misrepresentations to AGM:

22          a.    That AGM's funds would be safe and secure within the
23 Subaccount;

24          b.    That MCGRATH, MHI, and DOES 1 to 50's use of AGM's
25 deposited funds were in furtherance of a transaction with a thirty party client, as
26 opposed to for use in satisfaction of their own debts to BNYM and others.

27      93.    It was not until November 6, 2024, that AGM learned the truth.

28      94.    MCGRATH, MHI, and DOES 1 to 50's misrepresentations were false

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

15

**COMPLAINT**

at the time they made them.

95.     At the time MCGRATH, MHI, and DOES 1 to 50 made these false misrepresentations, they knew them to be false.

96.     AGM reasonably relied upon these false representations to its detriment and to its significant harm.

97.     As a proximate cause of MCGRATH, MHI, and DOES 1 to 50's intentional misrepresentations, AGM has been damaged in an amount of at least $463,668.62, but subject to proof at trial.

98.     AGM is also entitled to punitive damages against MCGRATH, MHI, and DOES 1 to 50 because the actions described above constitute malice, oppression, and/or fraud.

99.     AGM is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from September 24, 2024, until Judgment is entered.

100.   AGM is further entitled to recover reasonable costs incurred in prosecuting this cause of action.

## VIII.

## FOURTH CAUSE OF ACTION FOR FRAUD (CONCEALMENT)

### (AGM v. All Defendants)

101.   AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

102.   DEFENDANTS, and each of them, had a duty to disclose material facts to AGM, including but not limited to, that MCGRATH, MHI, and DOES 1 to 50 was in default with respect to its debts to BNYM and others and intended to utilize AGM's funds to satisfy its own debts to BNYM as of November 4, 2024.

103.   This duty arose from, among other things, the banking relationship between DEFENDANTS and AGM.

16

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

104.   AGM did not learn of the truth regarding the facts that DEFENDANTS had concealed from it until November 6, 2024.

105.   DEFENDANTS intentionally concealed these material facts from AGM.

106.   DEFENDANTS concealed these facts with the intent to deceive and defraud AGM and to induce AGM to alter its position to its injury, specifically by delaying its efforts to instruct BNYM to return its own funds from the Subaccount.

107.   AGM was unaware of these concealed facts and would not have acted or failed to act as it did if the facts had been disclosed, including never depositing any of its funds in the first place and/or leaving the funds in the Subaccount.

108.   As a proximate cause of DEFENDANTS' fraudulent concealment, AGM has been damaged in an amount of at least $463,668.62, but subject to proof at trial.

109.   AGM is also entitled to punitive damages against DEFENDANTS pursuant to Civ.C. §3294 because the actions described above constitute malice, oppression, and/or fraud.

110.   AGM is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from the dates the funds were improperly received or withheld by DEFENDANTS, commencing on September 24, 2024, until Judgment is entered.

111.   AGM is further entitled to recover reasonable costs incurred in prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq*.

## IX.

## FIFTH CAUSE OF ACTION FOR FRAUD (PROMISSORY FRAUD)

### (AGM v. All Defendants)

112.   AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

17

**COMPLAINT**

1    113.    At all times mentioned herein, MCGRATH, MHI, and DOES 1 to 50

2  made promises to AGM regarding their intention to provide AGM with access to the

3  Subaccount to assist in MCGRATH, MHI, and DOES 1 to 50 in the BTC

4  transaction.

5    114.    BNYM, by and through Schulman and Ng's direct correspondence with

6  AGM with respect to the management of the Subaccount, adopted and otherwise

7  ratified MCGRATH, MHI, and DOES 1 to 50's promises.

8    115.    DEFENDANTS intended that AGM rely on the foregoing promises

9  and AGM performed in accordance.

10    116.    In reliance on these promises, which were false, AGM deposited its

11  own funds in the Subaccount for DEFENDANTS' benefit.

12    117.    Notwithstanding, DEFENDANTS have failed and refused to return the

13  funds that AGM deposited in the Subaccount and, instead, use them to pay

14  MCGRATH, MHI, and DOES 1 to 50's debts, including their debts to BNYM.

15    118.    As a proximate cause of DEFENDANTS' false promises, AGM has

16  been damaged in an amount of at least $463,668.62, but subject to proof at trial.

17    119.    AGM is also entitled to punitive damages against DEFENDANTS

18  pursuant to Civ.C. §3294 because the actions described above constitute malice,

19  oppression, and/or fraud.

20    120.    AGM is further entitled to pre-judgment interest on these damages at

21  the tort rate of seven percent (7%) per annum from the dates the funds were

22  improperly received or withheld by DEFENDANTS, commencing on September 24,

23  2024, until Judgment is entered.

24    121.    AGM is further entitled to recover reasonable costs incurred in

25  prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq*.

26  / / /

27  / / /

28  / / /

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

18

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

# X.

## SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

### (AGM v. All Defendants)

122.    AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

123.    As the Custodian of an account holder for the Subaccount that DEFENDANTS established for benefit of AGM, DEFENDANTS owed fiduciary duties to AGM with respect to the use and handling of the funds that it deposited in the Subaccount.

124.    As detailed above, DEFENDANTS breached their fiduciary duties to AGM by and through their conspiracy to utilize AGM's separately and solely owned funds that it deposited into the Subaccount to pay for debts that MCGRATH, MHI, and DOES 1 to 50 owed to BNYM.

125.    As a proximate cause of DEFENDANTS' breach of their fiduciary duties, AGM been damaged in an amount of at least $463,668.62, but subject to proof at trial.

126.    AGM is also entitled to punitive damages against DEFENDANTS pursuant to Civ.C. §3294 because the actions described above constitute malice, oppression, and/or fraud.

127.    AGM is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from the dates the funds were improperly received or withheld by DEFENDANTS, commencing on September 24, 2024, until Judgment is entered.

128.    AGM is further entitled to recover reasonable costs incurred in prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq.*

/ / /

/ / /

19

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

## XI.

### SEVENTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST

### (AGM v. All Defendants)

129.    AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

130.    AGM has a 100% ownership interest in the funds that it deposited into the Subaccount.

131.    At no point did AGM provide DEFENDANTS authorization to utilize AGM's funds for any purposes other than what AGM expressly instructed.

132.    On or about November 6, 2024, DEFENDANTS conspired to utilize AGM's funds for their own purposes, without AGM's knowledge or consent.

133.    These reasons, AGM is entitled to an order from the Court that DEFENDANTS hold $463,668.62 in constructive trust for AGM and order the funds returned to AGM forth with.

134.    AGM is further entitled to pre-judgment interest on these damages at the tort rate of seven percent (7%) per annum from the dates the funds were improperly received or withheld by DEFENDANTS, commencing on September 24, 2024, until Judgment is entered.

135.    AGM is further entitled to recover reasonable costs incurred in prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq*.

## XII.

### EIGHTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

### (AGM v. All Defendants)

136.    AGM incorporates herein the allegations contained in each and every paragraph above, inclusive, with the same force and effect as though fully set forth herein.

137.    DEFENDANTS have been enriched by their retention of and use of the

**COMPLAINT**

1    funds that AGM deposited into the Subaccount for their own purposes.

2        138.    DEFENDANTS have received the full value of AGM's $713,668.62

3    that it deposited into the Subaccount (the remaining amount of which totals

4    $463,668.62), without AGM receiving any benefit.

5        139.    Unless and until DEFENDANTS transfer the $463,668.62 remaining of

6    AGM's funds, DEFENDANTS will continue to be unjustly enriched by their

7    retaining sole ownership of the funds.

8        140.    It would be against equity and good conscience to allow

9    DEFENDANTS to retain these funds.

10        141.    These reasons, AGM is entitled to an order from the Court that

11    DEFENDANTS must return the $463,668.62 that they hold to AGM forthwith.

12        142.    AGM is further entitled to pre-judgment interest on these damages at

13    the tort rate of seven percent (7%) per annum from the dates the funds were

14    improperly received or withheld by DEFENDANTS, commencing on September 24,

15    2024, until Judgment is entered.

16        143.    AGM is further entitled to recover reasonable costs incurred in

17    prosecuting this cause of action, pursuant to C.C.P. §1032 *et seq*.

18

19                             **PRAYER FOR RELIEF**

20        WHEREFORE, AGM prays for Judgment and relief against DEFENDANTS,

21    and each of them, as follows:

22    **FIRST CAUSE OF ACTION:**

23        1.    For economic damages in an amount to be proven at trial, but no less

24    than $463,668.62.

25        2.    For treble damages in an amount to be proven at trial, but no less than

26    $1,391,005.86.

27        3.    For punitive damages.

28        4.    For pre-judgment interest at the rate of seven percent (7.00%) per

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

21

**COMPLAINT**

1    annum from September 24, 2024, until entry of Judgment.

2        5.      For reasonable attorneys fees.

3        6.      For reasonable costs of suit.

4        7.      For such other and further relief as the Court may deem just and proper.

5    **SECOND CAUSE OF ACTION:**

6        1.      For economic damages in an amount to be proven at trial, but no less

7    than $463,668.62.

8        2.      For punitive damages.

9        3.      For pre-judgment interest at the rate of seven percent (7.00%) per

10    annum from September 24, 2024, until entry of Judgment.

11        4.      For reasonable costs of suit.

12        5.      For such other and further relief as the Court may deem just and proper.

13    **THIRD CAUSE OF ACTION:**

14        1.      For economic damages in an amount to be proven at trial, but no less

15    than $463,668.62.

16        2.      For punitive damages.

17        3.      For pre-judgment interest at the rate of seven percent (7.00%) per

18    annum from September 24, 2024, until entry of Judgment.

19        4.      For reasonable costs of suit.

20        5.      For such other and further relief as the Court may deem just and proper.

21    **FOURTH CAUSE OF ACTION:**

22        1.      For economic damages in an amount to be proven at trial, but no less

23    than $463,668.62.

24        2.      For punitive damages.

25        3.      For pre-judgment interest at the rate of seven percent (7.00%) per

26    annum from September 24, 2024, until entry of Judgment.

27        4.      For reasonable costs of suit.

28        5.      For such other and further relief as the Court may deem just and proper.

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

22

**COMPLAINT**

PURDY & BAILEY, LLP
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130

**FIFTH CAUSE OF ACTION:**

1.    For economic damages in an amount to be proven at trial, but no less than $463,668.62.

2.    For punitive damages.

3.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from September 24, 2024, until entry of Judgment.

4.    For reasonable costs of suit.

5.    For such other and further relief as the Court may deem just and proper.

**SIXTH CAUSE OF ACTION:**

1.    For economic damages in an amount to be proven at trial, but no less than $463,668.62.

2.    For punitive damages.

3.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from September 24, 2024, until entry of Judgment.

4.    For reasonable costs of suit.

5.    For such other and further relief as the Court may deem just and proper.

**SEVENTH CAUSE OF ACTION:**

1.    For imposition of a constructive trust in an amount to be proven at trial, but no less than $463,668.62.

2.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from September 24, 2024, until entry of Judgment.

3.    For reasonable costs of suit.

4.    For such other and further relief as the Court may deem just and proper.

**EIGHTH CAUSE OF ACTION:**

1.    For restitution in an amount to be proven at trial, but no less than $463,668.62.

2.    For pre-judgment interest at the rate of seven percent (7.00%) per annum from September 24, 2024, until entry of Judgment.

23

**COMPLAINT**

1    3.    For reasonable costs of suit.

2    4.    For such other and further relief as the Court may deem just and proper.

3

4                              **PURDY & BAILEY, LLP**

5

6    DATED: June 9, 2025          By: /s/ Micah L. Bailey

7                                      Micah L. Bailey
                                       Attorneys for AGM GLOBAL SECURITIES
8                                      LIMITED, Plaintiff

9

10                           **DEMAND FOR JURY TRIAL**

11        AGM hereby demands a trial by jury.

12

13                              **PURDY & BAILEY, LLP**

14

15   DATED: June 9, 2025          By: /s/ Micah L. Bailey

16                                      Micah L. Bailey
                                       Attorneys for AGM GLOBAL SECURITIES
17                                      LIMITED, Plaintiff

18

19

20

21

22

23

24

25

26

27

28

---

24

---

**COMPLAINT**

**PURDY & BAILEY, LLP**
A LAW FIRM
12520 HIGH BLUFF DRIVE, SUITE 220
SAN DIEGO, CALIFORNIA 92130