**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AGM GLOBAL SECURITIES LIMITED,<br>Plaintiff,<br>v.<br>THOMAS EDWARD MCGRATH, et al,<br>Defendants. | Case No.: 25-cv-1477-BJC-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BANK OF NEW YORK MELLON'S MOTION TO DISMISS [ECF NO. 10]** |

Pending before the Court is Defendant Bank of New York Mellon, National Association's ("BNYM").[1] Motion to Dismiss Plaintiff AGM Global Securities ("AGM") Complaint. ECF No. 10. Plaintiff has filed an opposition, and Defendant has filed a reply. For the reasons stated below, the Court **DENIES IN PART AND GRANTS IN PART** the Motion.

## I. BACKGROUND[2]

This case arises from a series of financial transactions in which Defendants are

[1] Defendant BNYM was incorrectly identified in the Complaint as "The Bank of New York Mellon, a New York corporation."

[2] Facts are taken from the Complaint unless otherwise stated.

alleged to have misappropriated approximately $700,000 belonging to Plaintiff AGM.

Defendant MHI is a privately held real estate development and investment company based in San Diego, California that is owned by Defendant Thomas McGrath ("McGrath"). ECF No. 1 ¶ 13. Plaintiff AGM is a corporate investment entity based in Wales and England, which invests in securities at wealth management desks and in global markets. Marnie Pascoe ("Pascoe") serves in an executive capacity with AGM and is based in Australia. Asher Corridon ("Corridon") serves in an executive capacity with AGM and is based in the United Kingdom.

Pivotal to the current controversy is the relationship between McGrath/MHI, AGM, and BNYM regarding various bank accounts. On September 21, 2022, MHI opened a bank account with BNYM for which BNYM would serve as custodian to manage assets ("BNYM Primary Account").

Two years later, on July 22, 2024, McGrath contacted AGM's Pascoe to propose a business deal in which McGrath/MHI would borrow money from AGM to buy Bitcoin. Motion to Dismiss ("MTD") at 7, ECF No. 10. AGM alleges that at this time, McGrath/MHI were experiencing significant financial distress, and MHI owed a significant amount of money to BNYM. McGrath did not disclose the financial condition of MHI to AGM's representatives.

McGrath and Corridon had multiple discussions regarding the proposed deal and the creation of a sub-account ("Subaccount") with BNYM that Plaintiff claims AGM would own, utilize, and control. On July 23, 2024, McGrath gave AGM the Subaccount banking information. The master account name was "BNYM Wealth Management" and the Subaccount was established under the name "AGM Global Securities Limited."

Daniel Schulman ("Schulman"), a Senior Vice President/Client Strategist employed by BNYM, served as the banking officer for the Subaccount. AGM thereafter received access to the online portal for the Subaccount.

On September 23 and 24, 2024, AGM funded the Subaccount by depositing $100.00 and $733,400.00, respectively, for a total of $733,500.00. On September 25, 2024, AGM's

Corridon directed Schulman/BNYM to wire $448,000.00 and $285,000.00 (totaling $733,000.00) of AGM's funds in the Subaccount to AGM's account with Zerocap Pty Ltd, Melbourne, an Australian based digital asset trading firm and liquidity provider, to advance the deal with McGrath/MHI. BNYM executed the transfers, but Zerocap advised AGM that the transfers came from an account with MHI's name, rather than AGM, and sought confirmation from Schulman and McGrath that the funds were from AGM. When neither responded, Zerocap returned the wire transfers.

On October 9, 2004, AGM instructed BNYM/Schulman in an email to wire $20,000.00 from the Subaccount to "Currency Cloud Limited." On October 14, 2024, AGM's Corridon instructed Shulman and Patrick Ng ("Ng"), another banking officer associated with BNYM/Subaccount, to wire $633,500.00 from the Subaccount to AGM's account with Finmo, another banking platform that it utilizes, in furtherance of the proposed transaction with MHI. Both wire transfers were initiated at AGM's direction and executed by BNYM. However, the October 14, 2024 wire to Finmo also failed because the name on the Subaccount again did not match AGM's.

After repeated problems with the Subaccount, AGM opened a new account with BNYM in AGM's name only. On October 22, 2024, Corridon asked Schulman to transfer AGM's funds in the Subaccount to the new account. Schulman responded: "Confirming MHI Capital LLC CUST AGM is the name used for the [Subaccount]. The account is owned by MHI Capital and to the best of my understanding there is an agreement between MHI and AGM **where the underlying JV[3] assets are the property of AGM**." ECF No. 1 at ¶ 49 (emphasis in original).

On October 30, 2024, the Subaccount held $713,520.09 in funds that belonged to AGM, as shown in the monthly Account Statement that BNYM issued. On November 4, 2024, McGrath told AGM's Pascoe that McGrath/MHI were 2 ¼ months in arrears in

---

[3] The parties do not define "JV assets" but context suggests they are the assets in the Subaccount.

payment MHI owed to BNYM. ECF No. 1 at 9.

On November 6, 2024, McGrath directed Schulman/BNYM to transfer some of AGM's funds into MHI's Wells Fargo Account. Specifically, McGrath stated via email "Daniel, Please close out the accounts and transfer balance of the cash balance [i.e., AGM's funds] to the MHI capital account coordinates below…Please have the cash transferred same-day priority." ECF No. 1 ¶ 54. On November 7, 2024, McGrath instructed BNYM to move $624,273.77 of AGM's funds from the Subaccount into the BNYM Primary Account. AGM could not access this account and was not notified about the transfer before it happened. On November 8, 2024, McGrath/MHI instructed BNYM, again without informing AGM, to move $44,697.00 of AGM's funds from the Subaccount into the MHI Wells Fargo Account. On November 12, 2024, McGrath/MHI directed BNYM to move an additional $44,697.85 of AGM's funds from the Subaccount into the MHI Wells Fargo Account, which AGM could not access. In total, McGrath/MHI directed BNYM to move $713,668.62 of AGM's funds from the Subaccount without AGM's knowledge or agreement. AGM demanded on multiple occasions that Defendants restore the funds. Instead of returning the funds, McGrath told AGM's Pascoe that the Subaccount had been depleted to a zero balance and that he was unable to return AGM's funds.

Plaintiff filed a Complaint against Defendants on June 9, 2025, asserting claims for 1) violation of California Penal Code § 496; 2) conversion; 3) fraud (intentional misrepresentation); 4) fraudulent concealment; 5) promissory fraud; 6) breach of fiduciary duty; 7) constructive trust; 8) unjust enrichment. ECF No. 1. On October 10, 2025, Defendant BNYM filed the present Motion to Dismiss. ECF No. 10. McGrath and MHI filed an Answer on October 14, 2025. ECF No. 13. On October 31, 2025, AGM filed an Opposition to the Motion to Dismiss and an Objection to Evidence Submitted by Defendant. ECF No. 16, 17. On November 10, 2025, Defendant BNYM filed a Reply in support of the Motion (ECF No. 22), along with a Reply to Plaintiff's Objection to Evidence (ECF No. 23).

//

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.") Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson,* 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998). "[T]o nudge a claim 'across the line from conceivable to plausible,' a plaintiff must plead facts that, if true, 'allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hikma v. Amarin,* 608 U.S. 580, 590 (2026).

## III. Discussion

Defendant BNYM argues that the Complaint must be dismissed because 1) BNYM owed no duties to AGM because AGM was not an account holder; 2) BNYM acted in accordance with McGrath/MHI's directives as required under California Commercial Code section 4401(a) because they owned the account; 3) BNYM is statutorily immune from AGM's claims under California Financial Code § 1450; 4) AGM fails to sufficiently plead claims for (a) violation of Penal Code § 496, (b) conversion, (c) fraudulent concealment,

(d) breach of fiduciary duty, (e) constructive trust, (f) unjust enrichment, and (g) promissory fraud.

**A. Incorporation of Exhibits A, B, and C.**

Defendant seeks to introduce transactional documents to show that AGM was not an accountholder with BNYM and, therefore, BNYM is statutorily immune from the claims because it owed no duty to AGM. According to BNYM, the Consolidated Account Agreement (Exhibit A), Account Opening Unit Review Sign Off (Exhibit B), and Designation of Authorized Person(s) (Exhibit C) confirm that AGM was not a BNYM customer. *Id.* Defendant states that AGM's Corridon was only authorized to receive balance information, account activity, and "other account related information" about the Subaccount that was owned by MHI. *Id.* Defendants claim the documents should be incorporated by reference because Plaintiff indirectly referenced them in the Complaint and the documents are central to Plaintiff's claims. In addition, Defendant argues that "Plaintiff's use of a screenshot from MHI/McGrath to provide account details, such as the Sub Account name, further confirms that the BNYM account documents . . . were properly incorporated by reference due to their centrality to Plaintiff's claim and do not need to be explicitly mentioned in Plaintiff's complaint." ECF No. 23 at 4.

In response, Plaintiff argues that Defendant seeks to convert the present Motion into a summary judgment motion by impermissibly incorporating Exhibits A through C. Oppo. at 8-9, ECF No. 16. Plaintiff contends that the Court should not incorporate the documents by reference because the Complaint makes no express reference to the documents. *Id.* at 7-8. Moreover, Plaintiff claims that none of these documents are "central" to their claims because the claims against BNYM "sound in tort and equity—civil theft, conversion, fraud, and unjust enrichment, from BNYM's knowing diversion of AGM's funds without AGM's knowledge or consent, not from breach or enforcement of any contract to which AGM was not a party." *Id.* at 8. In addition, the Authorized User Form (Ex. C), which BNYM relies upon to show "Inquiry Only" access for AGM's representative, concern BNYM's relationship with MHI—not AGM," and are therefore not central to Plaintiff's claims. *Id.*

Finally, AGM objects to the authenticity of the documents, contending that BNYM's attorney, Adriana F. Erquiaga ("Erquiaga") provides "no foundation in her Declaration to establish the authenticity and completeness of these Exhibits." *Id.*

Generally, courts "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal citation and quotation marks omitted). "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *U.S. v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). However, a court may "consider materials that are submitted with and attached to the Complaint." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). A court "may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018).

Here, the Complaint does not refer to the documents included as Exhibits A, B, and C of Defendant's motion. Although Plaintiff generally references the Subaccount throughout the Complaint, these references concern the representations made by Defendants McGrath/MHI and BNYM about ownership and control of the funds in the account. Defendant argues that Plaintiff's inclusion of the WhatsApp screenshot of the account information is tantamount to referencing the Account Opening Unit Review Sign-Off document in Exhibit B. However, the document in Exhibit B consists of multiple pages with considerable detail about the account, whereas the screenshot consists of the following information:

//

**BNY MELLON – NY**
BANK NAME: BANK OF NEW YORK MELLON
LOCATION: 240 GREENWICH STREET, NEW YORK, NY 10007
BIC/SWIFT CODE: IRVTUS3N
ACCOUNT NAME: BNYM WEALTH MANAGEMENT
ACCOUNT NUMBER: --- [unreadable]
ROUTING NUMBER: ---------
FURTHER CREDIT TO:ACCT. NO. ----- 6000- AGM GLOBAL SECURITIES LIMITED
BANK OFFICER: DANIEL SCHULMAN
BANKER EMAIL: --- BNYMELLON.COM
BANKER TELEPHONE: +1 212- ---

ECF No. 1 ¶ 33.

Plaintiff made no reference the document in Exhibit B in the Complaint.

Moreover, the claims in the Complaint do not necessarily rely on the contents of the documents and are not essential. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 9th Cir. 2005); *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (noting a document is incorporated "when its contents are described and the document is 'integral' to the complaint.") The documents in Exhibit A, B, and C are not central to Plaintiff's claims. Exhibits A and C were executed in 2022, long before the AGM Subaccount was established, and they concern the custodial banking agreement between McGrath/MHI and BNYM. Similarly, the substance of Exhibit B, the Account Opening Information for the Subaccount is not central to Plaintiff's claims. Instead, the claims assert that BNYM acknowledged AGM owned the funds in the Subaccount and acted upon Corridon's instructions regarding those funds, indicating the existence of a banking relationship.

These documents "merely creates a defense to the well-pled allegations in the complaint[.]" *Khoja,* 899 F.3d at 1002. Although Defendant claims the Exhibits are central to Plaintiff's contentions because they show that the Subaccount is governed by the master account between McGrath/MHI and BNYM, this is not central to the conduct underlying Plaintiff's claims. Plaintiff claims that they were informed the Subaccount belonged to them and demonstrate how this was a reasonable conclusion when BNYM initiated

transfers from the Subaccount only at AGM's Corridon's instruction. The Complaint asserts that on at least two occasions BNYM's representative Schulman acted on Corridon's direction: "On September 25, 2024, Corridon directed Schulman/BNYM to wire AGM's funds within Subaccount to AGM's account with Zerocap Pty Ltd" and on "October 9, 2004, at AGM's request and instruction (as confirmed in an email), BNYM/Schulman wired $20,000.00 from the Subaccount to 'Currency Cloud Limited'[.]" ECF No. 1 ¶¶ 38, 45. Both transfers were attempted by BNYM at AGM's sole direction.

Similarly, Defendant seeks to introduce Exhibit C, the Designation of Authorized Person(s), which appears to designate Corridon as authorized to make inquiries only as to the Subaccount. Defendant seeks to introduce the document as a defense to Plaintiff's claims, but the document is not central to Plaintiff's assertions that MHI told AGM it had control of the Subaccount funds, and BNYM's conduct that allegedly confirmed AGM's control of the funds when it executed wire transfers at Corridon's instruction.

Finally, Plaintiff challenges the authenticity and foundation of these documents, which causes the doctrine to fail automatically for purposes of a motion to dismiss. Therefore, the documents contained in Exhibits A, B, and C of Defendant's motion are not incorporated by reference.[4]

**B. Statutory Banking Framework- California Commercial Code § 4401(a) & California Financial Code § 1450**

California Commercial Code section 4401(a) provides: "A bank may charge against the account of a customer an item that is properly payable from that account... An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." Cal.Comm.Code § 4401(a). Under California Financial Code § 1450, a bank may disregard an adverse claim to funds held in an account

[4] At this point in the proceedings, Defendant's attempt to overcome the challenge using FRE 901(see ECF No. 23 at 3) is premature. In any event, as previously mentioned, the Exhibits do not satisfy the first two requirements of incorporation by reference.

by any person unless the adverse claimant produces an affidavit showing that the person is a fiduciary for the adverse claimant and the adverse claimant believes the fiduciary is "about to misappropriate" the property, or if the adverse claimant delivers an injunction or restraining order from a court to the bank. Cal. Fin. Code § 1450.

Defendant claims it committed no wrongdoing because section 4401(a) required BNYM "to act in accordance with MHI/McGrath's directives" when McGrath/MHI directed it to transfer funds from the Subaccount to other accounts. ECF No. 10 at 12. Defendant argues that AGM is an "adverse claimant" under section 1450 and is therefore prohibited from filing a claim against BNYM for following McGrath/MHI's directives unless it provides an affidavit stating McGrath/MHI were fiduciaries to AGM or AGM had a court order to restrain withdrawals from the McGrath/MHI BNYM account, which it has not done. *Id.* at 13.

With regard to section 4401(a), Plaintiff counters that the statute is inapplicable because the statute governs only "negotiable instruments," but the electronic funds transfers here are not negotiable instruments. Oppo. at 9 ECF No. 16. Plaintiff further argues that BNYM is not immunized by California Financial Code §1450 because "the statute addresses adverse claims to a depositor's account, not a bank's knowing misappropriation of funds it knew belonged to AGM." *Id.* at 11. Furthermore, Plaintiff states that the purpose of the statute is to protect banks from attempts by a "complete stranger" to make unsubstantiated claims to funds, whereas, in this case AGM had a right to the funds in the account. *Id*. at 12. Finally, Plaintiff contends that AGM is not asserting an "adverse claim" within the meaning of the statute because BNYM recognized AGM's right to control the funds in the Subaccount as demonstrated when it initiated transfers at the direction of Corridon/AGM. As a result, section 1450 does not provide Defendant with immunity. *Id*.

Here, Plaintiff has sufficiently pled facts showing that the electronic funds transfers initiated by AGM's Corridon do not fall under the purview of § 4401(a) for purposes of this Motion because they are not considered an "item" as defined in Cal. Comm.C.

§4104(a)(9). An "item" is a "Negotiable Instrument," and is governed by Division 3 of the California Commercial Code. *See generally*, Section 3103- 3104 ("Negotiable instrument is defined as 'an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order[.]'" Instead, a wire transfer is governed by Cal. Com. Code §§ 11101, which applies to "funds transfers," and provides "a comprehensive body of law to govern the rights and obligations resulting from wire transfers." *Zengen*, 41 Cal. 4th 239 at 253. Therefore, the Court finds California Commercial Code section 4401(a) inapplicable to Plaintiff's claims, and Defendant cannot rely upon it to support their assertions that McGrath/MHI controlled the Subaccount and could direct funds from it without consulting AGM.

In addition, the Complaint contains factual assertions that call into question the ownership of the funds in the Subaccount. The Complaint states that BNYM's representative Schulman wrote an email to AGM's Corridon on October 24, 2024, stating that the Subaccount was "owned by MHI Capital" and "there is an agreement between MHI and AGM where the underlying JV assets are the property of AGM." ECF No. 1 ¶ 49. Moreover, an email between Shulman and Corridon on November 16, 2024, stated that any "transfers need[ed] to be requested and confirmed by Thomas [McGrath]," but the Complaint asserts that on at least two occasions, BNYM conducted transfers of funds from the Subaccount upon direction of Corridon/AGM without McGrath's approval. Compl. ¶¶ 38, 46. Accepting these factual assertions as true, the Court concludes that the banking relationship between AGM and BNYM suggests Plaintiff was not an "adverse claimant" for purposes of Section 1450. *Cahill*, 80 F.3d at 337–38.

**C. Violation of Penal Code § 496**

"Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or

imprisonment pursuant to subdivision (h) of Section 117." Cal.Pen.Code § 496(a). Corporations and financial institutions that knowingly retain or divert stolen property may be held liable under this section. *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal.5th 333, 362 (2022).

Defendant argues that "AGM's claim for violation of California Penal Code section 496 fails because it cannot establish that BNYM knew the funds in the [Subaccount] were stolen." ECF No. 10 at 13. According to Defendant, Plaintiff has not shown BNYM had the required criminal intent and "BNYM was statutorily required to follow McGrath/MHI's instructions pursuant to California Commercial Code section 4401 and Financial Code section 1450." *Id.* at 14.

Plaintiff disagrees and points to the factual allegations in the Complaint, which assert that BNYM's Schulman understood the funds in the Subaccount belonged to AGM. Oppo. at 14. Despite this understanding, Plaintiff claims BNYM knowingly diverted $624,273.77 from the Subaccount to pay itself in satisfaction of McGrath/MHI's debt, thereby concealing and withholding those funds from AGM. *Id.*

Here, the pivotal question is whether Plaintiff has sufficiently alleged BNYM received property that had been "stolen" or "that has been obtained in any manner constituting theft." *Siry*, 13 Cal.5th at 362. The *Siry* Court held that section 496(c) applied where "the underlying conduct did not involve trafficking in stolen property, but rather the improper diversion of a limited partnership's cash distributions through fraud, misrepresentation, and breach of fiduciary duty." *Id.* at 358. As noted above, the Complaint contains factual allegations that Schulman/BNYM knew AGM owned the funds in the Subaccount but despite the knowledge, "BNY diverted $624,273.77 from the Subaccount to pay itself in satisfaction of MHI/MCGRATH's debt." ECF No. ¶ 56. Plaintiff alleges that BNYM thereby "concealed" or "withheld" AGM's funds. *Id.* ¶ 76. Assuming the truth of the facts asserted, Plaintiff has sufficiently pled a claim under § 496 because AGM asserts BNYM knew the funds belonged to AGM, did not inform AGM that they were moving the Subaccount funds to an account which AGM could not access, and used the

funds to satisfy McGrath/MHI's debt to BNYM. *Siry*, 13 Cal.5th at 361. Defendant's Motion is DENIED on this ground.

**D. Conversion**

"Conversion is the wrongful exercise of dominion over the personal property of another." *Taylor v. Forte Hotels Int'l,* 235 Cal.App.3d 1119 (1991). While "[t]he act must be knowingly or intentionally done," "a wrongful intent is not necessary." *Id.* (internal citations omitted).

Defendant contends that Plaintiff's conversion claim must be dismissed because AGM cannot establish an ownership interest in the Subaccount, and AGM has not alleged that BNYM "performed any wrongful acts with regard to handling funds in the Master Account and Sub Account." ECF No. 10 at 15.

In response, Plaintiff argues that "BNY[M]/Schulman took ***express direction*** from Corridon/AGM in initiating $1,386,500.00 in outgoing wires to third parties from the Subaccount from September 25, 2024-October 14, 2024," which indicates that AGM had an ownership and control interest in the Subaccount funds. Oppo. at 16.

The Court agrees. The Complaint sufficiently alleges a conversion claim against BNYM by citing to the October 24, 2024, email from Schulman that shows he believed the Subaccount funds belonged to AGM, but BNYM transferred all the funds from the account without notifying AGM. ECF No. 1 ¶ 49, 56. The assertions in the Complaint are sufficient to advance a claim of conversion. *Cahill*, 80 F.3d at 337–38.

**E. Fraudulent Concealment and Breach of Fiduciary Duty**

"The elements of fraudulent concealment are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. [Citation.]" *Burch v. CertainTeed Corporation,* 34 Cal. App. 5th 341, 348, 246 Cal.Rptr.3d 99 (2019).

The elements of a cause of action for breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal.App.4th 1070, 1077 (Cal.Ct.App.1995); *Benasra v. Mitchell Silberberg*, 123 Cal.App.4th 1179, 1183 (Cal.Ct.App. 2004). "California courts have generally held that banks are not fiduciaries for their depositors. They have also held, however, that a fiduciary relationship may arise between a bank and its depositors where funds are deposited in a custodial account."[5] *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1138 (C.D. Cal. 2003); *Van de Kamp v. Bank of America*, 204 Cal.App.3d 819, 859–60 (1988) ("It may safely be said the deposit of securities into a custodial agency account creates a trust relationship"); *LaMonte v. Sanwa Bank California*, 45 Cal.App.4th 509, 517 (1996).

Defendant contends that Plaintiff's claims for fraudulent concealment and breach of fiduciary duty should be dismissed because "AGM alleges that BNYM had a duty to disclose the fact that MHI/McGrath were in default with respect to debts owed to BNYM, and that as of November 4, 2024, BNYM intended to use funds in MHI/McGrath's accounts to satisfy those debts" but "AGM has not pled – and cannot plead – facts sufficient to establish that BNYM owed it a duty." ECF No. 10 at 16, 17. Defendant claims that "AGM cannot establish a banking relationship between itself and BNYM that would give rise to a duty to disclose." *Id.* at 17. Even assuming there was a banking relationship between AGM and BNYM, Defendant argues that "a banking relationship does not give rise to a duty to report on MHI/McGrath's debts." *Id.*

Plaintiff counters that the Complaint's allegations demonstrate that BNYM had a duty to disclose that it intended to use the Subaccount funds to satisfy McGrath/MHI's

---

[5] Although not defined by the parties, a custodial account is "a bank or investment account that is set up and managed for someone else [.]" Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/custodial-account (last visited September 30, 2026.

liability to BNYM because there was a banking relationship between AGM and BNYM. Oppo. at 17. In addition, Plaintiff argues that BNYM owed AGM a duty to disclose because there was a transactional relationship with AGM as indicated by "heeding AGM's instructions with respect to the disposition of the funds deposited into the Subaccount." *Id.* As a result, Plaintiff contends that BNYM owed a duty to AGM to disclose that it intended to use the funds contained within the Subaccount to pay itself on November 7, 2024. *Id.* According to Plaintiff, these "facts are sufficient to establish a plausible fiduciary duty between BNYM and AGM for purposes of this Motion." *Id.* at 19.

The assertions in the Complaint point to a course of conduct indicating that McGrath/MHI were in debt to BNYM when they entered the deal with AGM and opened the Subaccount, but BNYM did not disclose the arrearages to AGM. The Complaint alleges that BNYM and AGM had a banking relationship because the bank initiated electronic transfers on AGM's instruction, arguably giving rise to BNYM's duty to disclose to AGM that it intended to use the funds contained within the Subaccount to pay itself on November 7, 2024. ECF No. 1 ¶¶ 38, 45, 46. Despite AGM's request to transfer the Subaccount funds to their new BNYM account, BNYM chose to move the funds to MHI's master account, from which Plaintiff claims BNYM collected the outstanding debt owed by MHI. Plaintiff contends that "DEFENDANTS concealed these facts with the intent to deceive and defraud AGM and to induce AGM to alter its position to [injure itself], specifically by delaying its efforts to instruct BNYM to return its own funds from the Subaccount." *Id.* ¶ 106. AGM states that it was "unaware of these concealed facts and would not have acted or failed to act as it did if the facts had been disclosed, including never depositing any of its funds in the first place and/or leaving the funds in the Subaccount." *Id.* ¶ 107. These assertions, taken as true, satisfy the elements of fraudulent concealment.

In addition, the facts in the Complaint indicate that the master account was designated as a custodial account, and Plaintiff alleges that "[a]s the Custodian of an account holder for the Subaccount that DEFENDANTS established for benefit of AGM, DEFENDANTS owed fiduciary duties to AGM with respect to the use and handling of the

funds that it deposited in the Subaccount." ECF No. 1 ¶ 123. Construing these facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged a breach of fiduciary duty claim. See *Neilson*, 290 F.Supp.2d at 1138.

Accordingly, Plaintiff has advanced sufficient facts to support claims for fraudulent concealment and breach of fiduciary duty for purposes of a motion to dismiss. Defendant's request to dismiss these claims is, therefore, DENIED.

F. **Constructive Trust and Unjust Enrichment**

"A constructive trust is an equitable remedy that compels the transfer of wrongfully held property to its rightful owner." *Mattel v. MGA Entertainment, Inc.*, 616 F.3d 904, 908-909 (9th Cir. 2010); see also Cal. Civ.Code § 2223 ("One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."). "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it." *Id.*

It is unclear whether California courts recognize unjust enrichment claims, however the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos,* 828 F.3d 1023, 1038 (9th Cir. 2016). To assert a "quasi-contract" claim, a plaintiff must show that defendant "received and unjustly retained a benefit at Plaintiffs' expense." *Id.* "[D]ivision 11 of the California Commercial Code, [] codifies Article 4A of the Uniform Commercial Code. *BPi Bright Power, Inc. v. Umpqua Holding Corporation,* F.Supp.3d 904, 905-06 (N.D. Cal. April 19, 2023). Division 11 displaces "common law causes of action based on allegedly unauthorized funds transfers" in "two specific areas: (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11." *Zengen*, 41 Cal. 4th at 253 (2007).

Defendants contend that AGM's constructive trust claim fails because AGM does not sufficiently allege that BNYM obtained the Subaccount funds through "wrongful

means and would be unjustly enriched by it." ECF No. 10 at 18. In addition, Defendant contends that the claim fails because AGM did not allege facts showing that BNYM retained any of the funds or was enriched because AGM acknowledges that BNYM moved money to McGrath/MHI's Wells Fargo account and did not keep any of the funds from the Subaccount. *Id.* at 19. Defendant further argues that "AGM's common law claim for unjust enrichment fails because it is displaced by Article 4A of the Uniform Commercial Code," citing *Attisha Enters., Inc.*, *supra,* 505 F. Supp. 3d 1051, 1059. (S.D.Cal 2020). ECF No. 10 at 18.

Plaintiff counters that Article 4A of California Uniform Commercial Code § 11207, as addressed in *Attisha*, does not displace a common law claim for unjust enrichment and is inapplicable based on the present facts, citing *Zengen, Inc.*, 41 Cal. 4th at 247. Oppo. at 20-21. Moreover, §11207 would provide no "protection to AGM against the underlying injury and misconduct alleged, especially considering AGM's belief and understanding that BNYM is the party that still retains possession of $624,273.77 of its funds." *Id.* at 21. Plaintiff further disagrees with Defendant's statement that it was not enriched by the transfer, pointing to the Complaint's allegation that BNYM retained the balance to satisfy McGrath/MHI's debts. *Id.* at 22.

First, the Complaint asserts that BNYM wrongfully transferred funds from AGM's Subaccount to itself and retained those funds to satisfy MHI's obligations to BNYM, which is sufficient at this stage in the case to assert a claim for constructive trust. For instance, Plaintiff asserts that "On November 7, 2024, in accordance with MCGRATH's instructions to BNYM and without informing AGM, DEFENDANTS diverted $624,273.77 of AGM's funds from the Subaccount and into the BNYM Primary Account, which AGM could not access, and which AGM alleges, based upon information and belief, was used to satisfy MCGRATH/MHI's then existing debts they owed to BNYM." ECF No. 1 ¶ 56. The Complaint asserts that on "November 23, 2024, Pascoe and MCGRATH spoke again via WhatsApp, at which time MCGRATH admitted that a portion of AGM's funds had been used to satisfy MCGRATH/MHI's debt to BNYM and the balance of the funds,

$89,394.85, were diverted to MHI's Wells Fargo Account and which MCGRATH/MHI refused to restore." ECF No. 1 ¶ 65. These allegations satisfy the elements of a constructive trust claim because Plaintiff asserts the existence of a res (Subaccount funds); (2) AGM's alleged right to that res; and (3) BNYM's wrongful acquisition or detention of the res. *Mattel,* 616 F.3d at 908-909.

In addition, Article 4A does not displace Plaintiff's common law unjust enrichment claim. Contrary to Defendant's argument, the district court in *Attisha* did not hold that 4A displaces such a claim but instead stated that the UCC "does not automatically displace all other legal principles." *Attisha*, 505 F.Supp.3d at 1056. Instead "a plaintiff may bring a cause of action for negligence, conversion, or money had and received 'unless some particular provisions of the California Uniform Commercial Code [has] displaced them.'" *Id.* In *Attisha*, the court held that Section 11207 (misdescription of beneficiary) applied because the bank erroneously transferred plaintiff's funds to a fraudulent entity, and under that provision, the common law claims were displaced. *Id.* at 1055-59. Here, the facts do not indicate that Section 11207 applies because the wire transfers were not sent to the wrong beneficiary. See Cal.Coml. § 11207. Therefore, 4A does not displace the claims under these facts. Accordingly, Defendant's Motion to dismiss these claims is DENIED.

G. **Promissory Fraud**

"'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). The elements of promissory fraud are: "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent at the time of making the promise; (3) the promise was made with intent to deceive or with intent to induce the party to whom it was made to enter into the transaction; (4) the promise was relied on by the party to whom it was made; (5) the party making the promise did not perform; (6) the party to whom the

promise was made was injured." *Muraoka v. Budget Rent-A-Car, Inc.*, 160 Cal.App.3d 107, 119 (Cal. Ct. App. Sept. 17, 1984).

Defendant contends that AGM cannot maintain a claim for promissory fraud because Plaintiff does not allege that BNYM made any promises to AGM. Instead, Defendant asserts that AGM attempts to attach liability to BNYM for "MHI/McGrath's alleged promise to grant AGM access to the [Subaccount] by alleging that BNYM ratified MHI/McGrath's conduct." ECF No. 10 at 20. However, Defendant argues that McGrath/MHI "are not agents of BNYM and were not acting in the interest of BNYM when conducting business with AGM" and consequently, BNYM was not in a position to ratify any of MHI's promises. *Id.*

In response, Plaintiff argues that "AGM sufficiently alleges that BNYM promised to provide AGM with sole authority over the Subaccount, which, for a time, BNYM honored." Oppo. at 23. Plaintiff claims that if BNYM never intended that AGM could control and own the account, "this would constitute a false promise." *Id.* Plaintiff further contends that BNYM did not follow up with AGM as it promised when AGM requested a transfer of the Subaccount funds to a new AGM BNYM. Instead, BNYM wired all of the Subaccount funds between November 7 and November 12, 2024, thus, BNYM's promise to "provide an explanation"[6] regarding the transfer was a false promise. *Id.* at 23-24.

Construing these factual allegations in the light most favorable to Plaintiff, the Court finds that dismissal of this claim would be premature.

Plaintiff asserts BNYM represented that AGM had ownership of the Subaccount and acted in a manner consistent with that promise. The Complaint alleges that "DEFENDANTS and AGM agreed that AGM would enjoy sole access to the Subaccount

---

[6] The Complaint asserts that "[o]n November 4, 2024, Shulman emailed MCGRATH, Corridon, and Ng, in reference to the pending request to transfer AGM's funds out of the Subaccount and into an a[sic] new BNYM account held in AGM's name only, stating, 'The Legal Investigation team has not approved the transfer as of yet. There will be discussion tomorrow with the team to provide an explanation.'" ECF No. 1 ¶ 52.

and that MCGRATH/MHI [would have] no ownership or access to AGM's wholly owned funds that were to be deposited into the Subaccount." ECF No. 1, ¶ 36. The Complaint further alleges that "MCGRATH, MHI, and DOES 1 to 50 made promises to AGM regarding their intention to provide AGM with access to the Subaccount to assist in MCGRATH, MHI, and DOES 1 to 50 in the BTC[7] transaction (ECF No. 1 ¶ 113) and that "BNYM, by and through Schulman and Ng's direct correspondence with AGM with respect to the management of the Subaccount, adopted and otherwise ratified MCGRATH, MHI, and DOES 1 to 50's promises." *Id.* ¶ 114. According to Plaintiff, this material promise was confirmed through BNYM's actions when AGM directed BNYM to make transfers from the Subaccount. ECF Nos. 38, 45-46. In addition, the Complaint asserts that "[i]n reliance on these promises, which were false, AGM deposited its own funds in the Subaccount for DEFENDANTS' benefit." ECF No. 1 ¶ 116. However, "DEFENDANTS have failed and refused to return the funds that AGM deposited in the Subaccount and, instead, use them to pay MCGRATH, MHI, and DOES 1 to 50's debts, including their debts to BNYM." *Id.* ¶ 117. Plaintiff claims they have sustained damage "[a]s a proximate cause of DEFENDANTS' false promises . . . in an amount of at least $463,668.62, but subject to proof at trial." *Id.* at ¶ 118.

Assuming the truth of these assertions, Plaintiff has sufficiently alleged that BNYM made a promise regarding AGM's control of the Subaccount funds, which they did not intend to honor as evidenced by the diversion of funds to MHI's account without notice to AGM. Plaintiff' reasonably relied on the promise, which resulted in damage to AGM. However, Plaintiff has not pled facts sufficient to state that BNYM had the intent to "deceive or induce the promisee [AGM] to enter into a transaction" based on promises that AGM owned the Subaccount funds. *Behnke*, 196 Cal.App.4th at 1453. Accordingly, Defendant's Motion is **GRANTED** as to Plaintiff's claim for promissory fraud.

---

[7] Plaintiff does not define "BTC" in the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's promissory fraud claim (Claim 5), and **DENIES** Defendant's Motion to Dismiss as to the remainder of the causes of action.

**IT IS SO ORDERED**.

Dated: September 30, 2026

Honorable Benjamin J. Cheeks
United States District Judge